# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**ELIZABETH SRITE**                                                                              **PLAINTIFF**

**V.**                              **No. 4:25-cv-00215-JM-ERE**

**FRANK BISIGNANO, Commissioner**
**of the Social Security Administration**                                           **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition ("RD") has been sent to United States District Judge James M. Moody, Jr. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections should be specific, include the factual or legal basis for the objection, and be filed within fourteen days. If you do not object, you risk waving the right to appeal questions of fact.

**I.      Introduction:**

On March 22, 2022, Ms. Elizabeth Srite applied for Title II social security benefits. *Tr. 62*. In the application, Ms. Srite alleged disability beginning on October 10, 2017, but she later amended her alleged onset date to August 31, 2021. *Id*.

After conducting a hearing, an administrative law judge ("ALJ") found that Ms. Srite was not disabled. *Tr. 62-71*. On January 28, 2025, the Appeals Council denied Ms. Srite's request for review of the hearing decision, making the ALJ's denial of benefits the Commissioner's final decision. *Tr. 1-7*. Ms. Srite has requested judicial review.

For the reasons stated below, I recommend affirming the Commissioner.

## II.   The ALJ's Decision:[1]

Ms. Srite last met the insured status requirements of the Social Security Act on December 31, 2022. *Tr. 64*.

The ALJ determined that Ms. Srite did not engage in substantial gainful activity during the period from her alleged onset date of August 31, 2021, through her date last insured of December 31, 2022. *Tr. 65*. At step two, the ALJ determined that, through the date last insured, Ms. Srite had the following severe impairments: degenerative disc disease cervical and lumbar spine status post discectomy and spinal stenosis. *Id*. However, the ALJ concluded that Ms. Srite did not have an impairment of combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 66.

Next, the ALJ determined that, through the date last insured, Ms. Srite had the residual functional capacity ("RFC") to perform light work,[2] with the following

---

[1] The ALJ followed the required five-step analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment (Listing); (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

[2] The controlling regulation defines light work as requiring the ability to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, a good deal of walking or standing, and involving some pushing and pulling of arm or leg controls when sitting most of the time. 20 C.F.R. § 404.1567.

limitations: (1) never climbing ladders, ropes, or scaffolds; (2) only frequent balancing, stooping, and crouching; (3) only occasional kneeling or crawling; (4) can work alternating positions between standing and walking versus sitting for a cumulative total of 10 minutes in the morning and 10 minutes in the afternoon, repositioning for comfort only, while remaining on task, and not constituting off-task breaks; (5) only frequent handling with bilateral upper extremities; (6) only frequent performing of tasks requiring exposure to heights, open flames, or dangerous machinery and exposed electrical currents. *Tr. 66-67*.

At step four, the ALJ found that, through the date last insured, Ms. Srite was capable of performing past relevant work as an administrative specialist III, accounting clerk, and medical records clerk. *Tr. 70*. Therefore, the ALJ concluded that Ms. Srite was not disabled. *Tr. 70-71*.

### III. <u>Discussion</u>:

#### A.    **Standard of Review**

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B.     Overview of Facts and Relevant Medical History

Ms. Srite suffered from degenerative disc disease in the cervical and lumbar spine and spinal stenosis. The ALJ found these impairments to be severe.

Because Ms. Srite's arguments focus on her medical conditions of her hands, the following facts are tailored to that issue.[3]

---

[3] See *Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations").

Records from Chi Arthritis and Rheumatology Associates ("Chi") show that Ms. Srite had pain and discomfort in her hands. *Tr. 965-991*. A January 2022 clinic note showed no active synovitis in the hands and no swelling of the MCP or PIP joints.[4] *Tr. 966*. The doctor at Chi noted Heberden's and Bouchard's nodes formation in the hands. *Id*. X-rays of Ms. Srite's bilateral hands showed Erosive Osteoarthritis of the hands ("EOA"). *Tr. 967*. The doctor assessed Ms. Srite as needing "no opioids for pain control" and indicated she was not taking prescription pain control medications. *Id.*

At a March 2022 appointment at Chi, the doctor noted contracture on digits of both hands and tenderness to palpation. *Tr. 970*. Ms. Srite reported that previous steroid injections had helped relieve her pain in her hands.[5] *Tr. 971*. She was instructed to return to the clinic in three months. *Id*.

In May 2022, Ms. Srite reported her hands were doing better since the March injections, and that she was having no more pain or finger locking.[6] *Tr. 973*. She showed no sausage digit formation or wrist effusions. *Tr. 974*. The only instruction from the doctor at that visit was dietary education for weight gain. *Tr. 975*.

---

[4] Metacarpophalangeal and proximal interphalangeal joints.

[5] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

[6] Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Duvall v. Bisignano*, No. 4:25-cv-00120 KGB-PSH, 2025 WL 1812626, n.6 (E.D. Ark. July 1, 2025); *Locher v. Sullivan*, 968 F.2d 725, 728 (8th Cir. 1992).

In September 2022, Ms. Srite again reported great improvement from injections to the hands. *Tr. 976*. She was taking only acetaminophen for pain at that time. *Id*. The doctor added a diagnosis of Dupuytren's contracture of the hands. *Tr. 978*. January 2023 records from Chi showed that Ms. Srite had some worsening of pain, but that was after the end of the relevant time-period (December 31, 2022). *Tr. 981*. Ms. Srite's doctor continued with conservative pain management and instructed her to follow up in six months.

In a 2022 function report, Ms. Srite complained of hand pain, but said she could do a jigsaw puzzle, drink coffee, and read.[7] *Tr. 323-327*. She also reported that she could prepare simple meals, fold laundry, do some basic cleaning around the house, and text on her phone. *Tr. 325, 327*.

Ms. Srite completed a second function report in 2023. She claimed her pain was getting worse but admitted that she could fold clothes, pull her hair back into a ponytail, and text. *Tr. 355-358*.

C. **Ms. Srite's Arguments for Reversal**

Ms. Srite contends that evidence supporting the ALJ's decision is less than substantial. Ms. Srite argues that: (1) the ALJ failed to develop the record fully, resulting in a due process violation; (2) the ALJ erred when he found her hand

---

[7] Such daily activities undermine Ms. Srite's claims of disability. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

impairment nonsevere; and (3) the RFC did not fully incorporate Ms. Srite's limitations.

### 1.   Development of Record and Due Process Claim

Ms. Srite asserts that the ALJ failed to develop the record and lodges a wide range of constitutional arguments. Ms. Srite claims her due process rights were violated, because the ALJ limited her lawyer's examination of Ms. Srite to ten minutes, denying her a full and fair hearing. The arguments are meritless.

At the hearing, the ALJ told Ms. Srite's attorney, Deborah Hardin, the following:

> Ms. Hardin, please give me your best ten-minute examination of this lady as to why she's disabled, and please start with her most significant functional problems first. At the end of that time, if you need to go further, please let me know what and why we couldn't get to it in the first ten minutes, and I'll decide how much further we may go.

*Tr. 104*. At no point during the forty-minute hearing did Ms. Hardin raise any objection to the ALJ's instructions. After the ALJ and Ms. Hardin asked the VE questions, Ms. Hardin confirmed that she had "no other questions." *Tr. 116*.

Ms. Srite claims her rights were violated because the "ALJ's approach directly contravenes establish Social Security Administration's policy." *Doc. 10 at 5-6*. First, Ms. Srite identifies not policy that was violated, so it's not evident that the ALJ

violated any internal policies.[8] Second, even if the ALJ had violated a Social Security Administration policy, "no circuit has held that the [policies] create[] constitutional rights because, of course, only the Constitution, not an agency's rules or procedures, is the source of such rights." *Davenport v. Astrue*, 417 F. App'x 544, 547–48 (7th Cir. 2011) (emphasis in original); *Dukes v. Comm'r of Soc. Sec.*, No. 1:10-cv-00436, 2011 WL 4374557, at *9 (W.D. Mich. Sept. 19, 2011) (noting that "the agency procedures set forth in HALLEX, in and of themselves, do not create federal due process rights for claimants)." The Commissioner's "multi-stage administrative review process, along with judicial review pursuant to § 405(g), has traditionally been found to be sufficient to constitute adequate process." *See Wilburn v. Astrue*, 626 F.3d 999, 1003 (8th Cir. 2010); *Efinchuk v. Astrue*, 480 F.3d 846, 848-49 (8th Cir. 2007) ("Nothing about the proceedings . . . shows the procedural safeguards were constitutionally inadequate . . . .").

Ms. Srite's argument also ignores the fact that her counsel: (1) never objected to the ALJ's ten-minute limit; (2) did not ask for more time; and (3) twice advised the ALJ that she had no more questions. *Tr. 108, 116*. Finally, despite protestations

---

[8] Ms. Srite asserts that, "[n]owhere does the policy authorize arbitrary time limits based solely on administrative convenience." *Doc. 10 at 6*. However, she points to no Social Security Administration policy precluding the ALJ from setting time limits for the hearing.

8

to the contrary, Ms. Srite was not prejudiced by the time restriction.[9] If additional evidence needed to be elicited at the hearing, Ms. Srite's counsel had the opportunity to present it; she chose not to.

Additionally, Ms. Srite argues that Ms. Hardin was not prepared to limit her time to ten minutes (claiming that she had to completely overhaul her strategy on the spot). Ms. Srite claims that her lawyer was fully prepared to litigate before the hearing started. Notably, Ms. Hardin had not timely submitted Social Security Administration form 1696 (Appointment of Representative form); it must be submitted before the hearing to comport with the Commissioner's policies. *Tr. 109-111*. The ALJ asked Ms. Hardin to submit the form ASAP, and at the latest, by the end of the day of the hearing. *Id*. Based on the date and time stamps in the administrative record, Ms. Srite's legal team apparently submitted the 1696 form two months *after* the hearing took place. *Tr. 45-48*. Ms. Srite's argument that the ALJ's ten-minute instruction derailed Ms. Hardin's preparations is unpersuasive.

2. **Step Two and the RFC**

Ms. Srite's remaining arguments are similar, so I will address them together. She generally argues that her hand impairments should have been considered severe and properly incorporated into the RFC. *Doc. 10 at 3*.

---

[9] See *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (to show than any error was not harmless, Plaintiff must provide some indication that the ALJ would have decided differently absent the error). Ms. Srite has not shown this.

Step Two involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. *Id*. A "severe" impairment significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). The claimant has the burden of proving that an impairment is severe. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

A claimant's RFC represents the most she can do despite the combined effects of all of her limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ is not required to include limitations in the RFC that are not supported by the evidence in the record. *McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

The ALJ noted that Ms. Srite had "Dupuytren's contracture of left 3rd/4th fingers" which had *improved* status post injections [and] mild osteoarthritis bilateral hands *without evidence of complications*." *Tr. 65* (emphasis added). As a result, he concluded the hand impairments did not significantly her ability to perform work-

10

related activities and should not be considered a severe impairment. *Id.* Additionally, Ms. Srite's hand impairments appear to have improved with conservative treatment, as the record repeatedly notes, *e.g.*, "injection to … hand . . . was very helpful"; "doing well without complaints"; "injections helpful"; "improved since injections, no more issues with locking fingers." *Tr. 31, 178, 179, 543, 973. 975.* Ms. Srite needed no opioids for pain control and was not taking any pain medications. *Tr. 967.* "An impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002); *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (noting that only conservative treatment weighs against a finding of disability).

Though Ms. Srite cites ongoing hand issues, the objective medical evidence does not show her hand impairments were severe. Subjective complaints alone, without credible supporting medical evidence, are not sufficient to establish a severe impairment. *Reter v. Railroad Retirement Board*, 465 F.3d 896, 899 (8th Cir. 2006).

Notably, Ms. Srite reported enjoying painting by numbers and doing jigsaw puzzles. *Tr. 1021.* Both activities involve, at a minimum, frequent use of the hands.

Mr. Srite also argues that the ALJ failed to consider her hand impairments when formulating the RFC. To the contrary, the ALJ limited her to frequent handling with the bilateral upper extremities rather than constant handling. *Tr. 67.*

Based on the record as a whole, the ALJ properly considered Ms. Srite's impairments at Step Two and in the RFC.

## IV. <u>Conclusion</u>:

The ALJ applied proper legal standards in evaluating Ms. Srite's claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Court affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

Dated 13 November 2025.

_____
UNITED STATES MAGISTRATE JUDGE